***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner, together with the post-hearing depositions of Robert Burton and Marc Wert, and payroll records. Having reviewed the competent evidence of record, the Full Commission hereby modifies and affirms the Opinion and Award of the Deputy Commissioner.
 *********** ADDITIONAL EVIDENCE
In addition to the evidence presented at the deputy commissioner hearing, the Full Commission accepts as evidence in this case the deposition of Robert Burton taken on July 12, 2002, the deposition of Marc Wert taken on June 10, 2002, and the 4 pages of "payroll" information attached to the Defendant-Appellant's Supplemental Brief to the Full Industrial Commission.
 ***********
Based upon the competent evidence adduced from the record, the Full Commission makes the following
 FINDINGS OF FACT
1. Plaintiff's date of birth was October 2, 1969. He completed high school and has obtained his CNA. Since high school, he worked initially in temporary positions, worked for Southern Quilting as a sewer and he has done manual types of work. Plaintiff first received notice of the job he obtained with defendant-employer by way of a newspaper advertisement. When he called to inquire, he spoke to Jeff Childers, who interviewed him and said they were looking for a laborer. Mr. Childers called plaintiff back and offered him a job with defendant as a laborer making $9.00 per hour. Plaintiff usually worked 40 hours per week for defendant.
2. Defendant is in the construction business and has been loosely referred to as "Burton Roofing." Records have been filed indicating that the correct name for the entity that employed plaintiff was "Burton Roofing, Inc., II" which was a Virginia corporation, with Debra Burton listed as the sole shareholder and an officer of the corporation. Robert Burton testified, and the Commission finds as fact, that he is the husband of Debra Burton and that he served, in fact, as a vice-president for Burton Roofing, Inc., II, with authority to contract and manage the business of Burton Roofing, Inc., II. Robert Burton's authority was confirmed by the testimony of Marc Wert, the manager of the local Greensboro office.
3. Burton Roofing, Inc., II's home office is in Virginia Beach, Virginia. Burton Roofing, Inc., II, also maintained and operated an office out of Greensboro, North Carolina. Mr. Childers worked out of the Greensboro office. It was out of the Greensboro office that he hired plaintiff.
4. While plaintiff was employed by defendant-employer, defendant-employer employed approximately nine individuals, sometimes more, out of the Greensboro office, on a regular basis.
5. Plaintiff was paid by the hour for work he did for defendant-employer. The tools, equipment and materials were provided by defendant-employer. Plaintiff was hired by defendant-employer in either January or February 2000, as a laborer.
6. On the morning of September 14, 2000, plaintiff was picked up by defendant at his brother's house along with a co-worker named Orlando, and taken to the job site. It was raining that morning. Plaintiff was instructed to cover the roof they had been working on. The roof was made of metal. As plaintiff stepped on the wet roof, he slipped and started to slide off the roof, but caught himself. When he righted himself, he noticed that his right arm was bleeding. Plaintiff's co-workers assisted him in getting down and placed him in Jeff Childer's truck. Mr. Childer began to drive plaintiff to the hospital, but due to the right arm bleeding, they stopped and were instructed to elevate the arm until an ambulance could arrive. Plaintiff was taken by ambulance to Moses Cone Hospital where he was seen and treated by Dr. Matthew Weingold for injuries he sustained to his right arm. Plaintiff has been unable to get further treatment because his workers' compensation claim was denied and he does not have the resources to pay for the treatment. Plaintiff indicated at the deputy commissioner hearing that he cannot fully open his right hand, and that his ring and small finger remain in a clawed position. He is able to close his hand to make a fist, but cannot exert any pressure in doing so. He cannot hold a hammer or weed eater in his right hand. He has been unsuccessful in locating any work that he is capable of performing since the injury.
7. Plaintiff has incurred medical expenses from treatment he has received as a result of the injury he sustained on September 14, 2000. Defendant has not paid any of plaintiff's medical bills incurred as a result of the injury. Plaintiff's mother has paid for some or all of the prescription medication that plaintiff has required as a result of the injury, but she has not been reimbursed for the treatment.
8. Dr. Weingold has indicated that further treatment is needed to correct or lessen plaintiff's current problems. Plaintiff has not been able to obtain this treatment because he lacks the funds.
9. On September 14, 2000, defendant-employer did not have in force and effect workers' compensation insurance for the State of North Carolina. Burton Roofing, Inc., II, had workers' compensation insurance with Commonwealth Contractors Group Self-Insurance Association for employees domiciled in Virginia. A notice letter sent to "Burton Roofing, II, Inc." on March 30, 2000, stated:
 "We would like to remind you that this coverage is for work performed within the State of Virginia. You will be covered for incidental work out-of-state if needed, but keep in mind that all such work should be performed by Virginia domiciled employees. Also, should a claim occur in another state, the claim must be filed in Virginia as we can only pay Virginia benefits. The best solution would be to obtain insurance in the state where you perform the work thereby assuring that your claim will be fully covered."
Plaintiff was not and is not a Virginia resident and was not working in Virginia at the time and place of his injury. Plaintiff is a resident of North Carolina and was injured while working in North Carolina. Therefore, the Commonwealth Contractors Group Self-Insurance Association policy does not afford coverage for plaintiff's injury. Burton Roofing, Inc., II did not have workers' compensation insurance in North Carolina on plaintiff's date of injury.
10. Subsequent to plaintiff's injury, Burton Roofing, Inc. II, ceased activity because of tax liens. The operations of Burton Roofing, Inc., II, was then carried on under the name of BLB Renovations. All evidence suggests, and the Commission so finds, that BLB Renovations continued the prior operations of Burton Roofing, Inc., II, including completion of the work, use of the same Greensboro, N.C., office, employment of the same employees, and use of the same trucks, equipment, and materials. The Commission finds that BLB Renovations is the alter ego and successor to Burton Roofing, Inc., II.
11. Burton Roofing, Inc., was a business that Robert Burton operated from 1989 to 1991, before he married his current wife, Debra Burton, and therefore, was not plaintiff's employer and is not liable for this claim.
12. Robert Burton testified that his wife, Debra Burton, was responsible for securing and maintaining workers' compensation insurance for Burton Roofing, Inc., II. Although Robert Burton testified that his wife, Debra Burton, owned and operated Burton Roofing, Inc., II, on at least two occasions he testified that he either was, or in fact acted as, the vice president of the corporation. The Commission finds that Burton Roofing, Inc., II, did not maintain all of the required corporate formalities and that Robert Burton, in fact, participated in the operation of this business. Further, the evidence is, and the Commission so finds, that Robert Burton ceased operating the first Burton Roofing, Inc. because of a "tragedy in the family" that occurred in 1991 and thereafter operated as "Burton Roofing, Inc., II" with his new wife, Debra Burton, as the purported owner and operator of the business. Based on a totality of the evidence, the Commission finds that both Robert Burton and Debra Burton had the ability and authority to obtain workers' compensation insurance for Burton Roofing, Inc., II for the time period applicable to this claim.
13. Defendants complain that the Deputy Commissioner erred in failing to allow evidence of plaintiff's wages and in concluding that plaintiff has an average weekly wage of $360.00 per week. The Commission notes that the Employer's First Report of Accident, completed on a Virginia form, reported that plaintiff worked for defendant 60 days before his injury, that he worked 8 A.M. to 5 P.M., Monday through Saturday, at $7.00 per hour for an average weekly wage of $360.00. The Commission takes notice that 48 hours per week, with 8 of those hours at time and a half, at the rate of $7.00 per hour would total $364.00 per week. At the deputy commissioner hearing plaintiff testified that he worked 40 hours per week and earned $9.00 per hour for an average of $360.00 per week. Defendants have provided the Commission with 4 pages of payroll records for plaintiff that revealed the following:
4/28-5/3/00 21.5 hours $150.50 for an average of $7.00 per hour
5/23-5/31/00 29.5 hours $206.50 for an average of $7.00 per hour
6/22-6/28/00 37.5 hours $264.00 for an average of $7.04 per hour
6/29-7/5/00 18 hours $144.00 for an average of $8.00 per hour
The Commission notes that the payroll records submitted by defendants are incomplete and show that plaintiff's hourly wages were increasing. Although defendants asked for permission to present additional wage information, defendants have not filed a Form 22 and have not provided the complete wage information for plaintiff or other similar employee. At the deputy commissioner hearing, Marc Wert, who appeared at the hearing as the local manager for defendant, stated that plaintiff's testimony was correct. Therefore, based on the greater weight of the competent evidence presented to the Commission, the Commission finds that plaintiff's average weekly wage was $360.00 as evidenced by the Employer's First Report and plaintiff's testimony.
14. Plaintiff has been totally disabled since September 14, 2000.
15. As a direct and natural consequence of the injuries sustained on September 14, 2000, plaintiff has incurred the following medical expenses, for which defendant is liable:
A. Northside Drug Co., 9/16/2000 RX: $39.44
B. Hand Center of Greensboro 9/14/00-1/30/01: 9501.66
C. Moses H. Cone, Outpatient, 9/14/00: 2908.08
 D. Greensboro Anes Physicians, 9/14/00: 678.60
$13,127.78
This list is not exhaustive of past care provided, and plaintiff is in need of further medical treatment.
16. Defendants' denial and defense of this claim has been unreasonable and grounded in unfounded litigiousness.
 ***********
The foregoing Findings of Fact engender the following
 CONCLUSIONS OF LAW
1. On or about September 14, 2000, defendant-employer, Burton Roofing, Inc., II was subject to and bound by the provisions of the North Carolina Workers' Compensation Act, was required to maintain workers' compensation insurance, and failed to have in effect at that time workers' compensation insurance. G.S. § 97-1 et seq.
2. On September 14, 2000, defendant-employer, Burton Roofing, Inc., II, regularly employed three or more employees out of the Greensboro, North Carolina, office. G.S. § 97-2(1).
3. On September 14, 2000, the employer-employee relationship existed between plaintiff and defendant-employer, Burton Roofing, Inc., II. G.S. § 97-2(2).
4. On September 14, 2000, plaintiff sustained an injury by accident arising out of and in the course of his employment with Burton Roofing, Inc., II. G.S. § 97-2(6).
5. Plaintiff is entitled to benefits under the North Carolina Workers' Compensation Act as a result of the injury he sustained on September 14, 2000. G.S. §§ 97-25, 97-29.
6. Plaintiff's average weekly wage was $360.00, which produces a $240.00 average weekly wage. Plaintiff did not work for Burton Roofing, Inc., II for 52 weeks immediately preceding his injury; therefore, the first two methods for computing average weekly wage are not applicable.See G.S. § 97-2(5). Further, no evidence was presented to show the amount that plaintiff, or other similar employee, earned during each week of his employment as is necessary to compute average weekly wage under the third or fourth methods. Id. Therefore, pursuant to the fifth method the Commission computes the average weekly wage based on plaintiff's testimony, which was confirmed by Mr. Wert and was stated in defendant's first report of injury. Id.
7. Plaintiff was totally disabled from September 14, 2000, and continuing. G.S. § 97-29.
8. Defendant is liable for the reasonable and necessary medical care for plaintiff's injury, including but not limited to $13,127.78 in medical expenses, and such other and further medical care reasonably provided or to be provided for plaintiff's injury. G.S. §§ 97-2(19),97-25, 97-25.1.
9. Burton Roofing, Inc., (the predecessor to Burton Roofing, Inc. II) was not plaintiff's employer and is not liable for his injury.
10. BLB Renovations is the alter ego and successor organization for Burton Roofing, Inc., II, and is fully liable for plaintiff's injuries to the same extent as defendant-employer, Burton Roofing, Inc., II.
11. Both Debra Burton and Robert Burton had the ability to procure workers' compensation insurance for Burton Roofing, Inc., II. and thereby they, individually and/or collectively, are jointly and severally liable for plaintiff's workers' compensation benefits with Burton Roofing, Inc., II, and BLB Renovations. G.S. § 97-94(d).
12. The actions of Burton Roofing, Inc., II, BLB Renovations, Debra Burton and Robert Burton in denying this claim, subsequent failure to defend the claim at two hearings, and attempts to divert liability through a shell game, was unreasonable and constitute unfounded litigiousness, which warrants the assessment of attorney's fees pursuant to G.S. § 97-88.1.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following
 AWARD
1. Burton Roofing, Inc., II, BLB Renovations, Debra Burton and Robert Burton shall pay to plaintiff compensation at the rate of $240.00 per week beginning September 14, 2000, and continuing from that date until such time as plaintiff has returned to work earning the same wages he was earning at the time of the injury, or until further order of the Industrial Commission. All compensation which has accrued shall be paid to plaintiff in a lump sum. Through June 26, 2001, plaintiff was entitled to 40 and 6/7 weeks of compensation for a total of $9,805.71.
2. Burton Roofing, Inc., II, BLB Renovations, Debra Burton and Robert Burton shall pay all medical expenses plaintiff has incurred or will incur for treatment of the September 14, 2000 injury, to the extent that such treatment was reasonable and necessary to effect a cure, give relief, or lessen the period of disability. This includes, but is not limited to the $13,127.78 found in Finding of Fact No. 15.
3. An attorney's fee in the amount of one-third of the compensation due plaintiff, as awarded in paragraph 1 above, is hereby approved for plaintiff's counsel. Plaintiff's attorney's fees shall be made a part of the costs of this action, and defendants shall not deduct these fees from the compensation due plaintiff, but shall pay these fees directly to plaintiff's counsel in addition to the compensation due plaintiff. Defendants shall pay plaintiff's counsel a fee of one-third of the accrued sum, and shall weekly pay plaintiff's counsel a sum equaling one-third of plaintiff's ongoing compensation in addition to the full compensation due plaintiff.
4. This matter shall be referred to the Fraud Section of the North Carolina Industrial Commission for investigation and determination by that unit as to whether criminal charges shall be brought against Burton Roofing, Inc., II, BLB Renovations, Robert Burton, and/or Debra Burton for failure to maintain workers' compensation insurance in the state of North Carolina.
5. The question as to whether Burton Roofing, Inc., II, BLB Renovations, Robert Burton, and/or Debra Burton shall be subject to further civil penalties for failure to maintain workers' compensation insurance in North Carolina shall be remanded to a deputy commissioner for determination of whether additional penalties shall be imposed in accordance with the Act. Should defendants, Burton Roofing, Inc., II, BLB Renovations, Robert Burton, and/or Debra Burton, promptly pay the certified accrued arrearages and other past due benefits, and assume liability for, and commence payment for, continuing benefits, due plaintiff and his counsel, the Full Commission recommends that no additional civil penalty be imposed for the past failure of defendants to comply with the Act.
6. Burton Roofing, Inc., II, BLB Renovations, Robert Burton, and Debra Burton shall immediately provide to the North Carolina Industrial Commission proof of workers' compensation coverage, in force and effect, for the State of North Carolina.
7. Burton Roofing, Inc., II, BLB Renovations, Robert Burton, and Debra Burton Defendant-employer shall pay the costs of this action.
Burton Roofing, Inc. is dismissed as a party.
 *********** CERTIFICATE OF ACCRUED ARREARAGES ORDER FOR PAYMENT
Pursuant to G.S. § 97-87, the Commission enters the following Certificate of Accrued Arrearages:
 1. Name of Plaintiff: Robert Miles, 4200 Oakwood Forest, Greensboro, N.C. 27405;
 2. Name of Employer/Defendant: Burton Roofing, Inc., II, currently doing business as BLB Renovations;
3. Other liable parties: Robert Burton and Debra Burton;
 4. The sum of the amounts that have accrued and remain unpaid through the deputy commissioner hearing for indemnity ($9,805.71), medical benefits ($13,127.78), and attorney's fees ($3,268.57) is $26,202.06.
 5. Burton Roofing, Inc., II, BLB Renovations, Robert Burton, and Debra Burton are jointly and severally liable and judgment shall be entered against all defendants. The Commission hereby certifies that the information contained herein is a true account of accrued arrearages due plaintiff pursuant to an Award of the Commission in this claim.
This Award for accrued benefits may be enforced by plaintiff pursuant to all available legal remedies, without prejudice to establishing his entitlement to further and additional benefits under the Act.
IT IS SO ORDERED.
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER